**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

FILED

01 FEB 16  AM 8: 48

U.S. ....... COURT
N.D. OF ALABAMA

RITA K. JACK, as administratrix
of the estate of Edmund Grant
Jack, Sr.,

   Plaintiff,

v.           Civil Action No. CV-00-J-3120-NE

HUNTSVILLE COUNTRY CLUB,
a corporation; WILLIAM J. LYNCH,
a/k/a William Lynch & Associates,
an individual; THOMAS W. BROWN,
JR., an individual;  PACIFIC MUTUAL
LIFE INSURANCE COMPANY, a
corporation; ACORDIA SOUTHEAST,
INC., a corporation,

ENTERED

FEB 1 6 2001

   Defendants.

**MEMORANDUM OPINION**

  This cause comes before this court on plaintiff's motion to remand (doc. 14).

Plaintiff filed suit against these defendants in the Circuit Court of Madison County,

Alabama.  Plaintiff's state court complaint alleges that these defendants improperly

received life insurance benefits which were paid upon Edmund Jack's death.  Defendants

34

removed that action to this court pursuant to 28 U.S.C. § 1441.  Defendants argue

plaintiff's state court claims should be preempted due to the Employee Retirement

Income Security Act of 1974, 29 U.S.C. §§ 1001, *et. seq.* (ERISA).

ERISA preempts state laws "insofar as they may . . . relate to any covered

employee benefit plan." 29 U.S.C. §1144(a).  An "employment benefit plan" is  "(1) a

plan, fund or program (2) established or maintained (3) by an employer . . . (4) for the

purpose of providing . . . benefits . . . (5) to participants or their beneficiaries." *Donovan

v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir. 1982).  The issue before this court is

whether there was an ERISA plan established and maintained by defendant Huntsville

Country Club (Club) which involved Edmund Jack.

Edmund Jack was offered the position of Huntsville Country Club general

manager on September 21, 1994.  Club Exhibit A.  Jack began working for the Club in

the fall of 1994.  The offer included a base salary of $70,000 and an agreement that the

Club would pay an additional 3% of Jack's salary to the "Club Manager's Association

retirement plan". *Id.*  The Club purchased a life insurance policy from Pacific Mutual

Life Insurance Company (Pacific Mutual) covering the life of Edmund Jack and listed

itself as beneficiary.  The annual premium for the policy was $7,500.  Club Exhibit E.

The only premium payment made by the Club occurred on January 12, 1996 when the

Club issued a check to Pacific Mutual Life Insurance Company (Pacific Mutual) for

$2,100. Affidavit of Janice A. Hughes.  Edmund Jack was terminated as general manager

in July of 1996.  Jack died in a car accident in December of 1997.  Pacific Mutual then

paid the Club $220,013 as death benefits from the policy (doc. 1).

ERISA was enacted to "protect working men and women" by establishing "minimum standards for vesting of benefits, funding of benefits, carrying out fiduciary responsibilities, reporting to the government and making disclosures to participants." *Donovan*, 688 F.2d at 1370. Congress realized that certain high level employees, due to their position of influence, would not need the all of ERISA's substantive protection. *Op.Dep't Labor* 90-14 A, 1990 WL 123933, at *1. In light of this distinction Congress provided for "top hat plans".

Top hat plans are plans that are "unfunded and . . . maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§1051(2), 1081(a)(3), 1101(a)(1). These plans are exempt from ERISA's participation and vesting, funding, benefit accrual and joint survivor annuity requirements and fiduciary responsibility requirements. *Id.; Hollingshead v. Burford Equipment Co.*, 747 F.Supp. 1421, 1429 (M.D. Ala. 1990). Top hat plans are subject to the reporting, disclosure, administration, and enforcement provisions of ERISA. *Id.* Regardless of which "plan" an employer purports to possess, it is clear that an ERISA plan must actually exist and have been maintained for preemption to occur. *Donovan v. Dillingham*, 688 F.2d at 1371.

ERISA requires that plans "be established and maintained pursuant to a written instrument." 29 U.S.C. §1102(1). This Circuit has taken a more flexible approach and does not "require a formal, written plan" to establish a plan. *Donavan*, 688 F.2d at 1372.

3

"The reality of a plan, fund or program" must exist in order to find an ERISA plan. *Donovan,* 688 F.2d at 1373.  This reality can be found "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373. The lack of a written plan however, can present a reason for finding that no plan exists based on the "Supreme Court's emphasis . . . on the importance of a written plan". *Whitt v. Sherman Int'L Corp.,* 147 F.3d 1325, 1331 (11th Cir. 1998) *discussing Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 82-83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). One of the few certain propositions in this flexible analysis is that the purchase of insurance can evidence plan establishment, however "the purchase of insurance does not conclusively establish a plan, fund, or program". *Donovan,* 688 F.2d at 1373;  *Hensley v. Philadelphia Life Insurance Company,* 878 F.Supp. 1465, 1469 (N.D. Ala. 1995).

Defendants in this action ask this court to find that a plan existed based on the Club paying less than one third of an annual life insurance premium pursuant to the Club's offer to pay an amount of 3% of Jack's salary to the "Club Manager's retirement plan".  The Club admits that it never adopted the Club Manager's plan.  Huntsville Country Club's Opposition to Plaintiff's Motion to Remand, p. 3.  The Club apparently places the blame for not adopting this plan on the now deceased Mr. Jack: "Mr. Jack as Club Manager was responsible for just about everything at HCC.  He might have known why the application was not executed, but he is now deceased." *Id.* fn 1. The Club Managers Association of America (CMAA) offers deferred compensation plans for

4

persons such as Edmund Jack.  The purpose of these plans and their accompanying agreements is to "give the club direction with regard to the collection and disbursement of deferred compensation dollars and benefits."  Affidavit of Craig Campbell, CMAA's Plan Administrator.  CMAA agrees with the Club in that it never entered into any deferred compensation agreement with the Club for Edmund Jack.  *Id.*

In *Whitt v. Sherman Int'L Corp.,* this Circuit held that no ERISA plan existed because the employee could not determine what his rights were under the plan.  147 F.3d 1325, 1331 (11th Cir. 1998).  The plaintiff in *Whitt* served as Group Vice President and General Counsel to Sherman International Corporation.  *Id.* at 1327.  During his employment plaintiff Whitt entered into a stock option agreement with his employer.  *Id.* The employer underwent a financial restructuring and Whitt released his stock options in return for $300,000 and a "phanton stock plan or similar plan to be developed in the future."  *Id.*  Several draft phantom stock plans were proposed before plaintiff was terminated on November 2, 1995.  When plaintiff was terminated his employer informed him that any payment due to him under the "'Sherman Long-Term Incentive Plan for Senior Executives'" would be paid in accordance with the plan.  *Id.* at 1328.  The Incentive Plan was not actually adopted until October of 1996.  *Id.*  The court held that there was no ERISA plan because the plan did not exist at the "time of [plaintiff's] removal."  *Id.* at 1331.

In the present action it is clear that no plan existed at the time Jack was terminated. Furthermore, unlike the situation in *Whitt,* there has never been any plan adoption.

5

Defendants argue that the payment of $2,100 to Pacific Mutual established an ERISA plan and an IRS §457 deferred compensation plan.  However a §457 plan must be eligible by providing, among other things, that the deferred compensation will not be made available to the participants until the participant is separated from service, before the participant reaches the age of 70 -1/2, or as a result of some "unforeseeable emergency". 26 U.S.C. §457 (d)(1)(A).

There is no evidence before this court indicating how or if Edmund Jack would ever receive any benefits from this insurance policy.  There are promotional materials and proposals from CMAA as to how such a plan could be administered, however that plan was never adopted.  There is actually conflicting evidence as to who paid for the policy. The court has an affidavit from Janice Hughes stating the Club paid Pacific Mutual $2,100, which is $5,400 less than the annual premium.  There is also a letter from Acordia to Edmund Jack informing him that Pacific Mutual would actually bill him "on a quarterly basis for the $7,500 per year".

"The purchase of insurance does not conclusively establish a plan, fund, or program".  *Donovan,* 688 F.2d at 1373;  *Hensley v. Philadelphia Life Insurance Company,* 878 F.Supp. 1465, 1469 (N.D. Ala. 1995).  The partial payment of one premium certainly does not establish an ERISA plan.  This is especially true when there is no way to determine what if any rights the plaintiff had pursuant to the insurance contract.  The court finds that there is no ERISA preemption because there is no evidence of an ERISA plan maintained by the Huntsville Country Club for Edmund Jack.

6

Plaintiff's motion for remand (doc. 14) is hereby **GRANTED**.

**DONE** and **ORDERED** this _15_ day of February, 2001.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE